PAUCHOGUE LAND CORPORATION, Respondent, *v.* LONG ISLAND STATE PARK COMMISSION et al., Appellants.

**Eminent domain — real property — constitutional law — State — pleading — appropriation of private property to public use — right of owner to just compensation — pledge of faith of State may be sufficient — State Park Commission without authority to appropriate lands for park purposes in default of appropriation therefor — title of State to land may not be tested in action brought against it or its officers without its consent but legality of acts of officers may be tested and they held responsible for illegal acts — no cause of action stated against Commission or its members as such — cause of action stated against members individually to restrain acts without warrant of law and to recover damages occasioned thereby.**

1. The power of the State to appropriate private property for public use can be held subject to no further limitation than that the statute under which the property is taken shall recognize, on the taking of the property, the absolute right of the owner to just compensation and make provision for the prompt determination and payment of such compensation from the public funds, and it may be assumed that compensation need not be specifically provided by an appropriation of moneys therefor before the property is appropriated. The faith of the State may be ample security if it opens the door to the claimant to obtain the obligation of the State to pay.

2. The defendant, Long Island State Park Commission, therefore, might have been authorized to appropriate lands for park purposes and the claimant relegated to the Court of Claims for its compensation, but in this action to have adjudged void and to cancel and annul a seizure by the Commission of plaintiff's land and to enjoin further interference therewith, a contention that such power had been expressly conferred on it by sections 16 to 19 of chapter 112 of the Laws of 1924 and by section 59 of the Conservation Law cannot be sustained. An examination of those and other statutory and constitutional provisions applicable, shows that the power to appropriate land as well as to agree on compensation depends on an appropriation of money measurably adequate to justify the Commission in proceeding summarily; that the construction of the act of 1924 urged by the defendants is untenable; and that section 16 and following of that act and section 59 of the Conservation Law are connected with and limited by and dependent on section 8 of the act of 1924 which defines the general powers of the Commission and provides that it may acquire real estate for park purposes " from moneys or property on hand or appropriated for its use." This is at once a grant of power and a limitation on the exercise of such power.

3. The title of the State cannot be tested but the legality of the acts of the State's agents may be tested. The complaint, therefore, which demands judgment that the acts of the defendants be adjudged void and in violation of the rights of the plaintiff under the laws and Constitutions of the State and of the United States; that the action of the defendants be judicially canceled and annulled; that the defendants be enjoined from further interference with the property and plaintiff's right thereto; and that the plaintiff have judgment for the damages which it has sustained does not state a cause of action against the Long Island State Park Commission nor against the members thereof as such. As against them the suit is against the State itself and cannot be maintained. It states a cause of action against the individual defendants. The appropriation of and entry on the lands were illega when made and, so far as the individual defendants seek to justify their acts by such appropriation and entry, they acted without warrant of law. They may, therefore, be restrained from further waste of the lands in question and held liable for the damages, if any, sustained by the plaintiff by their acts in taking and withholding possession. But if an appropriation of money is made available a lawful reappropriation of the lands will terminate their illegal acts and the action will be one for damages only.

*Pauchogue Land Corp.* v. *Long Island State Park Comm.*, 215 App. Div. 816, modified.

(Argued May 4, 1926; decided May 25, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 22, 1926, which affirmed an order of Special Term denying a motion by defendants for judgment on the pleadings.

The following questions were certified: " 1. Does it appear from the face of the amended complaint herein that the Supreme Court has jurisdiction of the subject of the action?  2. Does the amended complaint herein state facts sufficient to constitute a cause of action? "

*Walter H. Pollak, Carl S. Stern, George D. Carrington* and *G. Frank Dougherty* for appellants.  Plaintiff's contention that for a valid taking there must be an existing appropriation involves a plain misconception of settled constitutional principles.  (*Crozier* v. *Krupp*, 224 U. S. 290; *Jerome* v. *Ross*, 7 Johns. Ch. 315; *Matter of Mayor, etc.*, 99 N. Y. 569; *Van Etten* v. *City of New York*, 226 N. Y. 483; *Talbot* v. *Hudson*, 82 Mass. 417; *Polly* v. *Saratoga, etc., R. R. Co.*, 9 Barb. 448; *U. S.* v. *North American Co.*, 253 U. S. 331; *Klein* v. *Maravelas*, 219 N. Y. 383; *Kahlen* v. *State of N. Y.*, 223 N. Y. 383.) Section 8 of the Long Island Park Act has no application to the acquisition of title.  (*People* v. *Adirondack Railway Co.*, 160 N. Y. 241; *Matter of Commissioners State Reservation*, 37 Hun, 537; *Alexander* v. *Alexander*, 85 Va. 353; *Sage* v. *Brooklyn*, 89 N. Y. 189.)  The fiscal provisions of the State Constitution and section 35 of the Finance Law afford no support to plaintiff's case.  (*Kirby* v. *State of N. Y.*, 68 Misc. Rep. 626.)  The courts are without jurisdiction to give relief, and it is immaterial that the suit in form is not against the State but against the officers. (*Sanders* v. *Saxton*, 182 N. Y. 477; *Belknap* v. *Schild*, 161 U. S. 10; *Switzer* v. *Commissioners*, 134 App. Div. 487; *Saranac T. & L. Co.* v. *Roberts*, 195 N. Y. 303; *Jacobus* v. *Colgate*, 217 N. Y. 235; *Matter of Berkovitz*, 230 N. Y. 261; *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; *Howarth* v. *Howarth*, 67 App. Div. 354; *People* v. *Inman*, 197 N. Y.

201; *People* v. *Ladew,* 237 N. Y. 413; *Governor of Georgia* v. *Madrazzo,* 1 Pet. 110; *Ex parte Madrazzo,* 7 Pet. 627; *Hopkins* v. *Clemson College,* 221 U. S. 636.)

*Charles H. Tuttle, Joseph S. Auerbach, William H. Robbins* and *Martin A. Schenck* for respondent. The question presented by this complaint is not as to the jurisdiction of the court but as to the jurisdiction of the defendants. Their acts, if done by private individuals, would manifestly be void in law and actionable. Hence, unless their mere claim to have acted in an official capacity places them above the law and beyond its reach, the Supreme Court as a constitutional court has the right to determine whether the statutes which they cite gave them power and jurisdiction to do the acts alleged in the complaint. This action is not against the State but against these defendants. It seeks as against them redress for injurious acts which were illegal and in excess of power. (*Hover* v. *Barkhoof,* 44 N. Y. 113; *Willy* v. *Mulledy,* 78 N. Y. 310; *United States* v. *Lee,* 106 U. S. 196; *Matter of Continental G. Corp.* v. *Craig,* 240 N. Y. 354; *People ex rel. Rand* v. *Craig,* 231 N. Y. 216; *Bastian* v. *State,* 18 N. Y. Ct. of Cl. Rep. 131; *Litchfield* v. *Bond,* 186 N. Y. 66; *Halfmoon Bridge Co.* v. *Canal Board,* 213 N. Y. 160; *Town of Easton* v. *Canal Board,* 216 N. Y. 486; *Rockaway Pacific Corp.* v. *Stotesbury,* 255 Fed. Rep. 345; *Hopkins* v. *Clemson College,* 221 U. S. 636; *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *Philadelphia Co.* v. *Stimson,* 223 U. S. 605; *Sloan Shipyards* v. *U. S. Fleet Corp.,* 258 U. S. 549; *Herr* v. *Central Kentucky Lunatic Asylum,* 28 L. R. A. 394; *Joos* v. *Illinois National Guard,* 257 Ill. 138; *Kirwan* v. *Murphy,* 83 Fed. Rep. 275; *Welsh* v. *Fisk,* 139 Ind. 637; 2 High on Injunctions, § 1309; *Loony* v. *Craig,* 245 U. S. 178.) The acts of the defendants in seizing land of a value of upwards of $800,000 were in excess of their jurisdiction and actionable, because violative of subdivision 7 of section 1 of chapter 603 of the Laws of 1924, which

placed a limit of $200,000 as the sum available to the Long Island State Park Commission " for the acquisition of lands." Moreover, at the time of the seizure of the Taylor estate, even this appropriation of $200,000 had been almost exhausted in acquiring other properties. (*Matter of City of Rochester*, 102 App. Div. 181.) The acts of the defendants were without jurisdiction and actionable, because in violation of the very act which created them. (Laws of 1924, chap. 112.) That act confined the defendants to their appropriations, and expressly limited their power of acquiring property to its acquisition "from moneys or property on hand or appropriated for its use." (§ 8.) The defendants had neither. (*People ex rel. Rand* v. *Craig*, 231 N. Y. 216; *Matter of Continental G. Corp.* v. *Craig*, 240 N. Y. 354, 362.) The acts of the defendants were also without jurisdiction and actionable, because in violation of section 35 of the State Finance Law (as amended and re-enacted by chapter 613 of the Laws of 1920). This section, as part of a general law of the State governing all boards and commissions, was as much applicable to the Long Island Park Commission as if expressly incorporated in the act creating the Commission. (*County of Orange* v. *Ellsworth*, 98 App. Div. 275; *County of Orange* v. *Storm King Stone Co.*, 180 App. Div. 208; *People ex rel. Rand* v. *Craig*, 231 N. Y. 216.) The acts of the defendants were without jurisdiction and actionable, because in violation of section 21 of article III of the State Constitution. (*People ex rel. Western Union Tel. Co.* v. *Roberts*, 30 App. Div. 78; 156 N. Y. 693; *People ex rel. Hopkins* v. *Board of Supervisors*, 52 N. Y. 556; *Rockaway Pacific Corporation* v. *Stotesbury*, 255 Fed. Rep. [C. C. A.] 345.) The acts of the defendants were without jurisdiction and actionable, because in violation of sections 2 and 4 of article VII of the State Constitution. These sections forbid the creation of obligations of the State which require action by future Legislatures to provide for payment thereof. (*People ex*

*rel. Hopkins* v. *Board of Supervisors,* 52 N. Y. 556.) The acts of the defendants were also without jurisdiction and actionable, because in violation of the " just compensation " and " due process " clauses of the Federal and State Constitutions. (*Bloodgood* v. *Mohawk & Hudson R. R. Co.,* 18 Wend. 9; *Jerome* v. *Ross,* 7 Johns. Ch. 315; *Western Union Tel. Co.* v. *Penn. R. R. Co.,* 195 U. S. 540; *Sweet* v. *Rechel,* 159 U. S. 380; *Traction Co.* v. *Mining Co.,* 196 U. S. 239; *Rockaway Pacific Corp.* v. *Stotesbury,* 255 Fed. Rep. 345; *Litchfield* v. *Bond,* 186 N. Y. 66; *Sage* v. *Brooklyn,* 89 N. Y. 189; *Matter of Mayor, etc., of City of New York,* 99 N. Y. 569; *State Water Supply Comm.* v. *Curtis,* 192 N. Y. 319; *People ex rel. N. Y. C. & H. R. R. R. Co.,* 206 N. Y. 274.) The acts of the defendants were also without jurisdiction and actionable, because they failed to comply with the requirement of section 18 of the act creating the Long Island State Park Commission (Laws of 1924, chap. 112), that before acquisition by condemnation or appropriation the commissioners shall attempt to reach an agreement with the owners as to the property to be acquired and the compensation to be paid therefor. (*City of Long Beach* v. *Long Beach Water Co.,* 209 App. Div. 902; *Dyckman* v. *Mayor, etc., of N. Y.,* 5 N. Y. 434; *Matter of City of Rochester,* 82 Misc. Rep. 598; *Matter of Bronx Parkway Commission,* 176 App. Div. 717.) The defendants' claim that section 59 of the Conservation Law constitutes a general authority to utilize the general funds of the State and to contract indebtedness on behalf of the State to any extent the particular commission may see fit, is wholly indefensible. (*People ex rel. Rand* v. *Craig,* 231 N. Y. 216; *County of Orange* v. *Ellsworth,* 98 App. Div. 275; *Matter of Continental G. Corp.* v. *Craig,* 240 N. Y. 354.)

Pound, J. The following is a summary of the complaint: On December 4, 1924, the plaintiff owned in fee

and possessed 1,500 acres (with the buildings thereon) in the town of Islip, Suffolk county, and known as the Taylor estate. The property was worth in excess of $800,000. On that day the defendants, claiming to act as the Long Island State Park Commission, undertook by *ex parte* action to seize forthwith both the title to and the possession of this land. The title they claimed to expropriate by their own *ex parte* act in filing in the Secretary of State's office a so-called notice of appropriation directed to· the plaintiff and asserting that the land " is appropriated by the People of the State of New York for public and State park purposes pursuant to Chapter 112 of the Laws of 1924 and Section 59 of the Conservation Law." The possession they seized by immediately sending State troopers, who by force put the plaintiff off the property and have maintained exclusive possession ever since.

At the time of these *ex parte* acts, the defendants did not have the means to pay the fair market value of the property, and did not have on hand or appropriated to their use moneys or property to pay its worth. On the contrary, the legislative appropriation of $200,000 to their use for the acquisition of land had theretofore been almost exhausted, and they had received nothing from any other source. No such expenditure had been authorized in the annual budget. Defendants had no means wherewith to make an offer of purchase.

The defendants forthwith exercised acts of dominion over the property; began changing its nature and destroying portions thereof; and they intend and are about to raze the buildings, cut timber and convert the place into a park, to the plaintiff's irreparable injury. Their adverse possession of the property depreciates it in value and renders it unmarketable.

The defendants seized the property with knowledge and notice that their action was illegal and that they were destroying the lawful rights of the owner.

The complaint demands judgment that the acts of the defendants be adjudged void and in violation of the rights of the plaintiff under the laws and Constitutions of the State and of the United States; that the action of the defendants be judicially canceled and annulled; that the defendants be enjoined from further interference with the property and plaintiff's right thereto; and that the plaintiff have judgment for the damages which it has sustained.

The defendants maintain (a) that their acts were the acts of the State of New York and that they are immune from suit by reason thereof, and (b) that they proceeded within the limits of the act creating the Long Island State Park Commission (L. 1924, ch. 112) in acquiring the lands in question for park purposes and that they might enter upon and take title to the lands in question although no appropriation of moneys to pay therefor had been made by the Legislature. The sections under which they purport to act are sections 16–18 and section 21 of the Long Island Park Act and section 59 of the Conservation Law (Cons. Laws, ch. 65) which contain a plan for acquiring lands by giving jurisdiction to the Court of Claims to hear claims for the value of lands taken and render judgment therefor. It is thereby provided: " Upon filing in the office of said commission, and in the office of the comptroller, a certified copy of the judgment of the court of claims, and a certificate of the attorney-general that no appeal from such judgment has been, or will be taken, by the State, or if an appeal has been taken, a certified copy of the final judgment of the appellate court affirming in whole or in part the judgment of the court of claims, the comptroller shall issue his warrant for the payment of the amount due the claimant by such judgment, with interest from the date of the judgment until the thirtieth day after the entry of such final judgment, and such amount shall be paid by the treasurer."

The first question that is presented is as to the juris-

diction of the court over the subject of the action. So far as the purpose of the action is to try the title of the State, the State may not be sued without its consent and so far as the action is an action against the State for that purpose, an action against the State Park Commission cannot be maintained. (*Sanders* v. *Saxton,* 182 N. Y. 477; *Saranac Land & Timber Co.* v. *Roberts,* 195 N. Y. 303, 321.) " But though the State cannot be subjected to hostile litigation at the instance of the individual, that immunity is not possessed by its officers, who can be held responsible for illegal trespasses or torts on the rights of an individual, even though they act or assume to act under the authority and pursuant to the directions of the State." (*Sanders* v. *Saxton, supra.*) In that case it was held that an action to quiet title will not lie against the State or its grantee on a tax sale at the suit of one *in possession of the real property.* But it was pointed out that actions to restrain the commission of unlawful acts by the State or government officers for which the command of their principal was no justification or to recover property held equally without warrant of right were clearly to be distinguished from the action before the court. If the plaintiff in the *Sanders* case had been ejected from possession by the State or its grantee he might have indirectly tested the title of the State by actions in the courts against the individuals claiming to act under authority of the State. So here the individual defendants are subject to suit to restrain them from wasting plaintiff's lands under claim of authority from the State. The validity of their acts may thus be tested. The defendants say: " The State is the sovereign and the sovereign can do no wrong." But the sovereign's agents are not above the law. The illegality of the official's act does not place him under the immunity of the sovereign. He must justify himself by showing that he acted rightfully as a public officer. (*Litchfield* v. *Bond,* 186 N. Y. 66; *Saratoga State Waters Corp.* v. *Pratt,* 227

N. Y. 429, 447; *Tindal* v. *Wesley,* 167 U. S. 204; *U. S.* v. *Lee,* 106 U. S. 196.)   So far as the complaint states a cause of action against the individual defendants who are the members of the State Park Commission, the law creating the Commission furnishes no shield except for acts done in conformity with the law.   So far as the action is against the State, the Commission and its members as such, it will not lie.   The title of the State cannot be tested but the legality of the acts of the State's agents may be tested.

The power of the State to appropriate private property for public use can be held subject to no further limitation than that the statute under which the property is taken shall recognize on the taking of the property the absolute right of the owner to just compensation and make provision for the prompt determination and payment of such compensation from the public funds.   (*Kahlen* v. *New York,* 223 N. Y. 383, 389.)   We may assume that compensation need not be specifically provided by an appropriation of moneys therefor before the property is appropriated.   The faith of the State may be ample security if it opens the door to the claimant to obtain the obligation of the State to pay.   It may be assumed that it will faithfully meet its obligations thus established. A judgment of the Court of Claims assessing damages on which the Comptroller shall issue his warrant for payment of the amount due the claimant with interest to be paid by the Treasurer may sufficiently guarantee the constitutional right to just compensation.   Otherwise, the State might not be able to act in an emergency to take property for purposes of public defense or health or other great public needs.   No needless limitations should be placed on the power of the State.   The Long Island State Park Commission might have been authorized to appropriate lands for park purposes in the name of the People of the State of New York, and the claimant might have been relegated to the Court of Claims and to the

judgment of that court and the warrant of the Comptroller issued thereon for his just compensation.    The defendant; contend that this power has been expressly conferred on it by the act, sections 16–19, and the Conservation Law, section 59.    The question is whether this unqualified grant of power is found within the four corners of the act in question.

No great emergency existed for the taking of the lands and we need have no hesitation in restraining the Commission from precipitate action.    The taking might well have been deferred until the State had actually made some provision for the payment of the compensation therefor, had given some indication of the limit of authority vested in the Park Commission.    If its contention is tenable, the conclusion logically follows that it has a " charter wide as the wind withal " and it might seize for park purposes all the lands in Suffolk and Nassau counties, and send the claimants to the Court of Claims to establish their damages.

The Park Bond Issue Act (L. 1924, ch. 602) was in effect by the vote of the People before the land in question was seized.    By its terms $1,000,000 was to be available for the development of a State Park system in Long Island but only " after appropriation or appropriations therefor from the Legislature."    No mandate to the Legislature to appropriate appears, but only a grant of power to appropriate.    Article III, section 21, of the State Constitution expressly provides:  " No money shall ever be paid out of the treasury of this State or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law."    No appropriation was made and no funds were available until after the taking of the lands in question the sum of $1,000,000 was appropriated by Laws of 1926, chapter 16. It follows that no appropriation was available for the acquisition of the lands in question at the time the Commission attempted to acquire title thereto.

We come next to a question of statutory construction rather than one of constitutional law. Section 8, Laws of 1924, chapter 112, defines the general powers of the Commission. " It shall have power from moneys or property on hand or *appropriated for its use* to acquire and make available for use as public parks or parkways all such real estate as is or may come under its jurisdiction." This is at once a grant of power and a limitation on the exercise of such power. It may acquire real estate for park purposes from money on hand or appropriated for its use. No other grant of general power is contained in the act. Section 16 defines how lands may be acquired, *i. e.* " by gift, agreement, condemnation or entry." This is not a distinct and specific grant of power but merely a statement of the manner in which powers granted shall be exercised. Section 17 provides specifically that when acquisition is by agreement the compensation agreed on shall be paid " out of the moneys made available as in this act provided," *i. e.*, by moneys on hand or appropriated for its use. Property may be acquired by appropriation but only subject to a significant limitation contained in section 18 of the act which provides: " If the said commission *shall be unable to agree with the owners of* or other persons having an interest in said real estate, or if by reason of legal incapacity, or absence of such owners or persons interested as aforesaid, or if for any other reason, no agreement can be made for the purchase of said real estate, the same may be from time to time acquired by the commission by condemnation proceedings or by appropriation in the name of the state, * * *."

When the parties are competent to agree, the power to acquire by agreement is plainly predicated on negotiations as to the compensation and moneys available to pay such compensation are the limit of the Commission's power to negotiate. The right to acquire by appropriation exists only where the Commission is unable

to agree with the owners or for some other reason no agreement can be made for the purchase of the real estate. The only basis of the right of appropriation is the inability to agree as to the purchase price when the Commission has funds to pay if the compensation were agreed on. No funds, no negotiations; no negotiations, no appropriation. Such is the scheme outlined in the statute. Patently it may not in reason be said that the power to acquire lands by purchase is less than the power to acquire by appropriation when the two are thus inseparably linked together. It follows inevitably that the power to appropriate land as well as to agree on compensation depends on an appropriation of money measurably adequate to justify the Commission in proceeding summarily; that the construction of the act urged by the defendants is untenable; and that section 16 and following of the act and section 59 of the Conservation Law are connected with and limited by and dependent on section 8 of the act.

It by no means follows that if the amount of money appropriated by the Legislature is inadequate fully to pay the judgment of the Court of Claims, compensation is not sufficiently provided for to meet constitutional demands and that an act of appropriation of lands is, therefore, *ultra vires* and void. The amount appropriated is a qualified limitation upon the power to act. Public officials are presumed to act within their authority and if they in good faith and with authority of law appropriate lands found by the Court of Claims to be of greater value than the amount actually appropriated therefor, the credit of the State may be pledged to meet the deficiency. Otherwise the whole plan of appropriation by entry or condemnation would be dependent on the infallibility of the public officials in estimating the true value of property taken by them for State purposes.

The appropriation of and entry on the lands was illegal when made. So far as the individual defendants seek

to justify their acts by such appropriation and entry, it must be held that they acted without warrant of law. They may, therefore, be restrained from further waste of the lands in question and held liable for the damages, if any, sustained by the plaintiff by their acts in taking and withholding possession.  But if an appropriation of money is made available a lawful reappropriation of the lands will terminate their illegal acts and the action will be one for damages only.

The complaint does not state a cause of action against the Long Island State Park Commission nor against the members thereof as such.  As against them the suit is against the State itself and cannot be maintained. (*Saranac Land & Timber Co.* v. *Roberts, supra.*)   It states a cause of action against the individual defendants and to that extent both questions should be answered in the affirmative.

The orders should be modified by dismissing the complaint as against the Long Island State Park Commission and its members as such, and otherwise affirmed, without costs.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, CRANE and LEHMAN, JJ., concur; ANDREWS, J., absent.

Ordered accordingly.